IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEE CATLEDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 5065 |
| | ) | |
| CITY OF CHICAGO, the CHICAGO | ) | |
| POILCE DEPARTMENT, OFFICER | ) | Judge John J. Tharp, Jr. |
| MCKNIGHT, OFFICER DANIELLE | ) | |
| M. KAPPEL, and OFFICER DALE | ) | |
| MARTIN. | ) | |
| | | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lee Catledge alleges that Chicago police officers detained him on a public street without justification and then searched his parked car without probable cause or consent. He filed a complaint against the officers (including an unknown officer), the City of Chicago ("City"), and the Chicago Police Department ("CPD") alleging Fourth Amendment claims under 42 U.S.C. § 1983 as well as supplemental state law claims. The defendants now move to dismiss the complaint in its entirety. For the reasons stated below, the defendants' motion to dismiss is granted in part and denied in part. Catledge's claims against the City and CPD are dismissed in their entirety, and his supplemental state law claims against the individual officers are also dismissed. However, Catledge's federal claims against the named officers sufficiently state plausible claims upon which relief may be granted, and therefore the motion is denied as to those claims.

## I. Background

### A. Facts

Catledge alleges that on August 20, 2008, as he was sitting in his parked car on West Madison Street in Chicago, a helicopter began to hover overhead.[1] Catledge believed that the helicopter was an unmarked Chicago police helicopter that had also frequently hovered over his residence. To discourage the helicopter from remaining overhead, Catledge alleges that he pointed a video camera at it, and it then departed. A few minutes later, defendant police officer McKnight approached Catledge's car and asked him to step out of the vehicle. McKnight stated that a woman had complained that Catledge was filming her with his video camera, which Catledge denied. Catledge also told McKnight that even if he had filmed someone, that action was not illegal. McKnight admitted to Catledge that "it is not against the law to tape someone," but he stated that he was investigating a "suspicious activity."

While Catledge was speaking with McKnight, three plainclothes police officers appeared on the scene and searched his car without a warrant and without his consent.[2] Catledge continued to protest the police actions, but one of the plainclothes officers told him to "continue to stand there and be quiet." The plainclothes officers located batteries and a two-way radio in Catledge's car, and questioned him about those items. After their search was complete, the police officers informed Catledge that the woman whom he had allegedly been filming was not filing a

---

[1] The Court accepts Catledge's factual allegations as true for the purposes of this motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

[2] The complaint does not identify specifically defendants Kappel and Martin as two of the three plainclothes officers, but the Court will give the *pro se* plaintiff the benefit of the doubt and presume for the purposes of this motion that Kappel and Martin were among those officers. Catledge has leave to amend his complaint to allege the identities of the plainclothes officers specifically and to clarify which actions those two defendants performed.

complaint, and told him to "consider yourself lucky, sick creep." Then all of the officers departed.

### B. Procedural History

Though this litigation is only at the pleadings stage, it has already had a long and winding history relevant to the defendants' motion to dismiss. Catledge filed his original complaint on August 18, 2009, naming the City, CPD, McKnight, and three "unknown" police officers as defendants. Catledge also filed an application for leave to proceed *in forma pauperis*, which the district judge denied.[3] Catledge thereafter failed to pay the required filing fee and his complaint was dismissed on January 13, 2010. Catledge appealed the dismissal order, and on September 23, 2010, the Seventh Circuit reversed on the basis that the district judge should have granted Catledge *in forma pauperis* status. Upon remand to the district court, Catledge's petition to proceed *in forma pauperis* was granted on October 28, 2010. On December 15, 2010, however, the district court *sua sponte* dismissed Catledge's complaint for failure to state a cognizable legal claim.

Catledge appealed again and on June 30, 2011, the Seventh Circuit again reversed the dismissal of his federal law claims, but found that Catledge had abandoned his state law claims on appeal. *Catledge v. City of Chicago*, 428 Fed. Appx. 646, 648 (7th Cir. 2011). In vacating the district court's ruling, the Seventh Circuit did not distinguish the claims against the City and Police Department from the claims against the police officers. Catledge then filed an amended complaint against the same defendants, and served the CPD and City on October 19, 2011, and October 27, 2011, respectively. On December 9, 2011, an attorney appeared on behalf of Officer McKnight and moved to dismiss the claims against him on the ground that Catledge failed to

---
[3] This case was transferred to this Court's docket effective June 5, 2012. All relevant portions of the procedural history took place while the case was assigned to the previous judge.

effect service of process.[4] Four days later at a status hearing, the district court denied McKnight's motion, stating that he was "going to consider service proper on Officer McKnight and timely." Transcript of Dec. 13, 2011 hearing (Dkt. 67) at 7. The court also granted Catledge time to conduct limited discovery into the identities of the three unknown officers. Catledge was able to discover the identities of Officers Kappel and Martin, and he filed another amended complaint substituting them as defendants on February 28, 2012. That is the complaint that is now before the Court on the defendants' motion.

## II. Analysis

Catledge asserts two federal law claims, for false detention and illegal search and seizure, and two state law claims, for intentional infliction of emotional distress and *respondeat superior*. The defendants make several arguments in favor of dismissing each of Catledge's claims. First, the officer defendants argue that Catledge failed to effect service on them within the allotted 120-day period for service, and therefore the claims against each officer should be dismissed pursuant to Rule 12(b)(5). Next, the City asserts that it cannot be held liable for the actions of its employees in this case under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978), and the CPD claims that it does not have the capacity to be sued. Further, Officers Kappel and Martin contend that the claims against them are precluded by the statute of limitations. Finally, all defendants argue that Catledge's state law claims are barred by *res judicata*.

### A. The Officer Defendants' Arguments Regarding Failure Of Service Have Already Been Rejected.

Officers McKnight, Kappel, and Martin argue that they were not served with process within the 120-day period required by Rule 4(m), and therefore they should be dismissed from

---

[4] All defendants moved, in the alternative, to dismiss on substantive grounds.

4

this lawsuit. The defendants argue, viewing the timeline in the light most favorable to Catledge, that he was required to serve the officers by September 10, 2011. Officers Kappel and Martin were not served until March 15, 2012, and Officer McKnight still has not been served with process.

But the defendants previously filed a motion making precisely this argument and Judge Der-Yeghiayan, the judge then assigned to this case, denied it.[5] At a hearing on December 13, 2011, Judge Der-Yeghiayan considered and rejected the defendants' service of process argument. The judge stated:

> Okay. This is what I'm going to do, I'm going to consider service proper on Officer McKnight and timely. Even if it wasn't timely, I'm going to extend the time for plaintiff based on the fact that the case went to the Seventh Circuit and back that service is fine. We need to address the issue on the merits now; not based on [the] procedural service issue.

Transcript of Dec. 13, 2011 hearing (Dkt. 67) at 7. The judge also struck the defendants' substantive motion without prejudice, and stated that he would consider the substance of the motion if it was re-filed after Catledge had the opportunity to identify the unknown officer defendants. But the judge made clear that "service is not going to be one of the issues right now based on what I've seen in the record." *Id.* at 8.

The Officer Defendants offer no basis to revisit Judge Der-Yeghiayan's prior ruling. The Court will not alter the prior judge's ruling considering service of process timely as to McKnight, so it rejects his argument that the claims against him should be dismissed because he has not been served. Officers Kappel and Martin were served relatively quickly after being identified in discovery, and they do not raise any new arguments besides those already presented and rejected

---

[5] On December 9, 2011, the defendants moved to dismiss Catledge's claims against Officer McKnight for failure to serve, and in the alternative, for failure to state a claim. Dkt. 64. That motion made the very same service of process argument that the defendant officers make here, and several paragraphs of that motion are repeated verbatim in the present motion.

in the prior motion. Therefore, the Court will consider service timely on those defendants as well, pursuant to the previous order in this case. Additionally, Catledge has established "good cause" for failing to serve the officers within 120 days of filing his complaint, and he is therefore entitled to an extension. *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). Even if Catledge had failed to show good cause for the delay in service, the Court would exercise its discretion to extend his time to serve the complaint in light of the convoluted procedural history of this case. *Id.*

### B. The Claims Against The City Are Dismissed Because Catledge Fails To Allege Any Municipal Policy Or Custom.

Next, the City argues that Catledge's claims against it must be dismissed because municipalities cannot be held liable for the actions of their employees based on the doctrine of *respondeat superior* under § 1983. *Monell*, 436 U.S. at 691; *Torres v. City of Chicago*, 123 F. Supp. 2d 1130, 1132 (N.D. Ill. 2000). The City is correct; because Catledge does not allege that his damage was "caused by an official policy, custom, or usage of the municipality," his claims against the City cannot survive. *Torres*, 123 F. Supp. 2d at 1132. Catledge argues that the City's Superintendent of Police has policymaking authority, and that the Superintendent was in charge of the defendant officers that allegedly violated his rights. But that is precisely the type of *respondeat superior* liability that is prohibited by *Monell*.[6] Because Catledge has not identified any specific policy or custom that caused his injury, his claims against the City are dismissed. And because he has already had several opportunities, and ample time, to amend his complaint, the dismissal against the City is with prejudice.

---

[6] Catledge also argues that *Monell* was wrongly decided based on "historical misreadings." Response Br. (Dkt. 89) at 6. Even if that were correct, the Court is constrained to follow the Supreme Court's binding precedent unless and until it is overruled. *See, e.g., United States v. Soy*, 413 F.3d 594, 610 (7th Cir. 2005) (explaining that district court is required to follow Supreme Court and Seventh Circuit decisions).

### C. The CPD Is Not A Suable Entity.

Catledge does not oppose the CPD's argument that it should be dismissed because it lacks the capacity to be sued. Response Br. (Dkt. 89) at 9. Therefore, the Court dismisses Catledge's claims against the CPD with prejudice because it is a nonsuable entity. *See, e.g., Dunmars v. City of Chicago*, 22 F. Supp. 2d 777, 780 (N.D. Ill. 1998) ("The Chicago Police Department is a nonsuable entity.").

### D. *Res Judicata* Bars Catledge's State Claims.

Finally, the defendants argue, and the Court agrees, that *res judicata* bars Catledge's state law claims. On December 15, 2010, Judge Der-Yeghiayan dismissed Catledge's lawsuit, finding that "the complaint has failed to state a cognizable legal claim in this court." Dkt. 35. Catledge appealed, and the Seventh Circuit vacated the order, holding that Catledge had stated federal claims. The Seventh Circuit noted, however, that Catledge did not challenge the propriety of Judge Der-Yeghiayan's ruling dismissing his state law claims and therefore concluded that the "supplemental, state-law claims . . . have been abandoned on appeal." *Catledge*, 428 Fed. Appx. at 648. The defendants therefore assert that Catledge's attempt to reassert those claims in his amended complaint is therefore barred by the doctrine of *res judicata*.

*Res judicata* applies where three requirements are satisfied: "(1) an identity of the parties or their privies; (2) an identity of the cause of action; and (3) a final judgment on the merits [in the earlier action]." *Johnson v. Cypress Hill*, 641 F.3d 867, 874 (7th Cir. 2011). Here, it is undisputed that the parties and the cause of action are identical. It is also clear that the December 15, 2010, order was a final judgment on the merits, and that Catledge did not successfully appeal the judgment as to the state law claims. Therefore, *res judicata* applies, and the state law claims are dismissed with prejudice.

Catledge argues that it is inequitable to apply *res judicata* here because his lawsuit was reinstated after a successful appeal. But he is incorrect—his appeal only went to his federal Fourth Amendment claims, not to his state law claims. He could have maintained his state law claims on appeal, but he did not. Thus, it is not unfair to hold him to the consequences of his own actions. *See, e.g., Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) (refusing to reconsider district court's ruling where plaintiff failed to challenge the ruling on appeal).

### E. Catledge's State Law Claims Against Kappel And Martin Were Filed Beyond The Statute Of Limitations, But His Federal Law Claims Are Timely.

Officers Kappel and Martin also argue that Catledge's claims against them should be dismissed on statute of limitations grounds. The defendants are correct as to Catledge's state law claims, and those claims would therefore be dismissed even if they were not barred by *res judicata*. Catledge's federal claims, however, are saved by the doctrine of equitable tolling and the officer defendants' motion to dismiss the federal claims is therefore denied.

Under Illinois law, the statute of limitations for § 1983 claims is two years, and the statute of limitations for state law claims against municipal employees is one year. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012) ("the statute of limitations for a § 1983 claim in Illinois is two years"); 745 ILCS 10/8-101 (one-year statute of limitations for state law claims against municipal employees). Equitable tolling extends the statute of limitations if a plaintiff could not have reasonably been expected to identify the defendants sooner. "A litigant is entitled to equitable tolling if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lee v. Cook County*, 635 F.3d 969, 972 (7th Cir. 2011) (internal quotations omitted).

Here, the statute of limitations should be equitably tolled from September 29, 2009, through July 22, 2011. Despite Catledge's diligent efforts to discover the names of the officers who allegedly violated his rights, he was precluded from conducting discovery or otherwise using the litigation process to discover their names by this court's orders denying his in forma pauperis motion and dismissing his complaint, respectively, on September 29, 2009 and December 15, 2010. Because the court thwarted his ability to maintain an operative complaint, Catledge could not reasonably have discovered the officers' names until after he was vindicated on appeal and his complaint was reinstated. And indeed, once he was permitted to conduct discovery, Catledge was able to identify two of the three officers involved in the events of August 20, 2008 (or so the Court must assume for purposes of this motion, anyway). After excluding time during which the statute of limitations was equitably tolled, as described above, the deadline for Catledge's § 1983 claims was June 12, 2012.

Because the one-year statute of limitations on Catledge's state law claims elapsed prior to any court order that limited Catledge's ability to discover the officers' names, however, equitable tolling does not affect his ability to bring the state law claims. The deadline for those claims to be filed was therefore August 20, 2009, one year after the incident took place, and therefore the state law claims are time barred as to Kappel and Martin.

Catledge's claims against Kappel and Martin, moreover, do not "relate back" to the date of his original complaint. An amended complaint relates back if the new defendant "received such notice of the action that it will not be prejudiced in defending on the merits" and also "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). But an amended complaint does not relate back when, as here, the amendment substitutes the true defendant for a "John

Doe" an unknown defendant, because an initial complaint against an unknown defendant is not a "mistake" under to Rule 15. *See Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008) ("plaintiffs cannot, after the statute of limitations period, name as defendants individuals that were unidentified at the time of the original pleading"); *Haggard v. Dart*, No. 12-4862, 2012 WL 6720740, *4 (N.D. Ill. Dec. 27, 2012) ("Plaintiff must submit a proposed amended complaint naming these defendants within the statute of limitations period if he wishes to proceed against them."). Therefore, the operative date of the complaint against Kappel and Martin is February 28, 2012—the date on which Catledge filed his amended complaint naming them. That date is within the two-year statute of limitations for the federal law claims, but well outside the one-year statute of limitations for the state law claims. Therefore, Catledge's state law claims against Kappel and Martin are dismissed with prejudice as untimely, but his federal law claims survive.

\* \* \*

For the reasons set forth above, all of Catledge's claims against the City and the CPD are dismissed with prejudice. Catledge's state law claims are also dismissed with prejudice with respect to all defendants. But the defendants' motion to dismiss is denied with respect to Catledge's federal false detention and illegal search and seizure claims against Officers McKnight, Kappel, and Martin.

Entered: February 26, 2013

John J. Tharp, Jr.
United States District Judge